UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEANNA KAPPLER and CHRISTIAN GUERRA *on Behalf of Themselves and on Behalf of All Others Similarly Situated*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 4:23-cv-40106-IT |
| OLIVE GARDEN HOLDINGS, LLC, DARDEN CORPORATION, and GMRI, INC., | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

October 16, 2026

TALWANI, D.J.

Pending before the court is Plaintiffs' Motion for Conditional Certification Under the Fair Labor Standards Act ("Motion to Certify") [Doc. No. 61]. Plaintiffs allege that Defendants violated the Fair Labor Standards Act's ("FLSA") minimum wage and tip credit provisions and seek to pursue claims on behalf of servers and bartenders who worked at Olive Garden restaurants operated by Defendants.

Also pending are Plaintiffs' Motion to Strike Olive Garden's Evidence Submitted in Opposition to Plaintiffs' Motion for Conditional Certification ("Motion to Strike") [Doc. No. 83] and Plaintiffs' Motion for Approval of Class Notice and Consent Form ("Motion for Approval") [Doc. No. 63].

For the reasons set forth below, the Motion to Strike [Doc. No. 83] is DENIED, the Motion to Certify [Doc. No. 61] is GRANTED, and the Motion for Approval [Doc. No. 63] is

DENIED without prejudice to permit the parties to confer and submit an updated class notice and consent form.

## I. Procedural Background

After a Complaint [Doc. No. 1] was filed initiating Despres v. Olive Garden Holdings, LLC, et al., No. 4:23-cv-10013 (D. Mass.) ("the Despres Action"), and numerous individuals opted in to that litigation, see Notice of Filing Consents to Join Wage Claim 1–11 [Doc. No. 11], Defendants filed a Motion to Compel Arbitration and Dismiss [Doc. No. 16]. The parties then agreed to toll the statute of limitations for potential collective members to opt in while the parties investigated whether other individuals had signed arbitration agreements. See Elec. Clerk's Notes [Doc. No. 25]. The court subsequently directed Plaintiffs to file the instant case for individuals with whom Defendants did not have an arbitration agreement, Elec. Clerk's Notes [Doc. No. 29]; severed the claims of those Plaintiffs[1] into the instant action; and stayed the Despres Action pending the outcome of arbitration, Order Granting Joint Mot. to Sever and Stay 1–2 [Doc. No. 40].

Plaintiffs then filed the operative Third Amended Collective Action Complaint [Doc. No. 51] ("Third Amended Complaint") and moved for conditional certification of a collective action under the FLSA. See Mot. to Certify 1–2 [Doc. No. 61].[2] Plaintiffs seek to pursue these claims on

---

[1] The Plaintiffs in the instant action are Deanna Kapler and Christian Guerra, with opt-in consents filed by Tammy Augusto, Julia Chocian, Erin Contreras, Brandi Hubler, Wanda Juhl, Antonio Moore, Stephen Poindexter, and Charlotte Stewart. Order Granting Joint Mot. to Sever and Stay 1 [Doc. No. 40].

[2] The original tolling agreement covered the period when the parties investigated whether other individuals had signed arbitration agreements. See Elec. Clerk's Notes [Doc. No. 25]. At a scheduling conference on January 24, 2024, Defendants agreed to continue to toll the statute of limitations for potential collective members to opt in. Jan. 24, 2024 Tr. 5:8–7:17 [Doc. No. 55]. The parties confirmed that the tolling agreement remained in place at conferences held on August 5, 2024, and on March 3, 2025.

behalf of a collective composed of "[a]ll current and former servers and bartenders who worked at an Olive Garden restaurant operated by Defendants and were paid an hourly rate less than the minimum wage during the three-year period prior to the filing of this Complaint to the present." Mot. to Certify 2 [Doc. No. 61].[3]

## II. Factual Background

Plaintiff Deanna Kappler worked as a server and bartender at an Olive Garden Restaurant in Illinois from approximately September 2004 through at least June 2020. Third Am. Compl. ¶ 28 [Doc. No. 51]; Answer ¶ 28 [Doc. No. 54]. Plaintiff Christian Guerra worked as a server at two Olive Garden restaurants in Tennessee from at least August 2018 through May 2022. Third Am. Compl. ¶ 29 [Doc. No. 51]; Answer ¶ 29 [Doc. No. 54].

Defendants own and operate Olive Garden restaurants throughout the United States. Third Am. Compl. ¶ 23 [Doc. No. 51]; Answer ¶ 23 [Doc. No. 54]. Olive Garden restaurants are full-service restaurants that employ tipped workers, such as servers and bartenders, to serve customers. Third Am. Compl. ¶ 24 [Doc. No. 51]; Answer ¶ 24 [Doc. No. 54].

Plaintiffs allege that Defendants utilized the FLSA's tip-credit provision to meet their minimum wage obligations to their tipped employees. Third Am. Compl. ¶¶ 2, 27 [Doc. No. 51]. The tip-credit provision allows employers to pay a tipped employee less than the minimum wage owed to non-tipped employees and credit the employee's tips toward the employer's minimum wage obligation. 29 U.S.C. § 203(m)(2)(A). Plaintiffs allege that Defendants willfully violated FLSA's minimum wage and tip credit provisions in the following ways:

---

[3] Plaintiffs do not seek to represent Olive Garden servers and bartenders who worked in states that do not permit employers to take the tip credit. See Reply ISO Mot. to Certify 2 & n.1 [Doc. No. 80].

a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiffs of the desire to rely on the tip credit to meet their minimum wage obligations. Defendants failed to properly inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced Plaintiffs' direct wage below the minimum required hourly wage for tipped employees:** Plaintiffs were required to purchase certain clothing to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiffs were required to perform improper types, and excessive amounts, of non-tipped work, including but not limited to making salads, baking bread, cutting fruit and lemons, dusting signs and pictures, vacuuming floors, polishing silverware, doing dishes, scraping gum from underneath tables, cleaning surfaces in the restaurant with sanitizer, and performing a deep clean of the restaurant.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week or for more than 30 consecutive minutes:** Plaintiffs were required to perform greater than 20% of their time or for more than 30 consecutive minutes in a shift performing non-tip producing side work, including but not limited to rolling silverware, refilling condiments, restocking items, filling ice, cleaning the wait station, and brewing tea and coffee.

Third Am. Complaint ¶ 8 [Doc. No. 51]; see id. ¶¶ 51, 73.

## III. Standard of Review

The FLSA permits individual employees to bring an action against their employers on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). Because those benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action," the FLSA's collective action provision "grant[s] the court the requisite procedural authority to manage the

process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Id. (citation omitted).

The parties dispute the standard of review that should apply in determining whether the named plaintiffs are "similarly situated" to the employees whom they seek to represent. See Mem. ISO Mot. to Certify 12 [Doc. No. 62]; Opp'n to Mot. to Certify 7 [Doc. No. 77].

To determine whether to give such notice to potential opt-ins, "most courts — including most district courts in this circuit—follow a two-step approach[.]" Cunha v. Avis Budget Car Rental, LLC, 221 F. Supp. 3d 178, 182 (D. Mass. 2016); see Wright v. Liberty Mut. Grp., Inc., 683 F. Supp. 3d 91, 95 (D. Mass. 2023) (citing Trezvant v. Fid. Emp. Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006)). Plaintiffs urge the court to follow this approach. Mem. ISO Mot. to Certify 12 [Doc. No. 62].

Under the two-stage approach,

> [t]he first stage determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, based only on the pleadings and any affidavits which have been submitted. At the first stage, the plaintiff has the burden of showing a reasonable basis for her claim that there are other similarly situated employees. In other words, the plaintiff must make a modest factual showing that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan. The standard at the initial stage has been called "not particularly stringent," "fairly lenient," "flexible," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b). Under this "fairly lenient" standard, the initial stage analysis typically results in conditional certification of a collective action.

Morales Posada v. Cultural Care, Inc., No. 1:20-cv-11862, 2023 WL 4085816, at *6 (D. Mass. June 20, 2023) (quoting Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357, 364 (D. Me. 2010)).

Although the standard at the first stage is lenient, it is not "invisible." Wright, 683 F. Supp. 3d at 95 (quoting Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008)).

"Rather, 'as a matter of sound case management' and to avoid 'a frivolous fishing expedition at the employer's expense,' courts should generally require the party moving for conditional certification to make 'a preliminary factual showing that there actually exists a similarly situated group of potential plaintiffs.'" Id. (quoting Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10, 18 (D.P.R. 2005)).

At the second stage, after discovery is complete,

> an employer may move to decertify the collective action . . . and the court must then make a factual determination as to whether there are similarly-situated employees who have opted in. Factors relevant to the stage-two determination include: factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action. If the court finds then that employees are not "similarly situated," it will decertify the class and dismiss the opt-in plaintiffs without prejudice.

Morales Posada, 2023 WL 4085816, at *6 (quoting Prescott, 729 F. Supp. 2d at 364–65).

Defendants encourage the court to reject the two-stage approach and adopt the procedure implemented by the Fifth Circuit in Swales v. KLLM Transport Services, L.L.C., 985 F.3d 430 (5th Cir. 2021). Opp'n to Mot. to Certify 7–8 [Doc. No. 77]. In Swales, rather than follow the two-stage approach, the Fifth Circuit held that "a district court must rigorously scrutinize the realm of 'similarly situated' workers." 985 F.3d at 434. Specifically, a district court "should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." Id. at 441.

The court finds no persuasive reason to deviate from the two-stage approach commonly used by courts in the First Circuit, especially where "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013) (citation omitted).

## IV. Discussion

### A. *Motion to Strike*

Plaintiffs seek to strike the Decker Declaration [Doc. No. 77-1] and attached exhibits submitted by Defendants with their Opposition to Motion for Conditional Certification [Doc. No. 77]. Mot. to Strike 1–2 [Doc. No. 83]. Plaintiffs argue that the court should not consider this evidence because "courts in this Circuit have held that such evidence should not be considered at the Notice stage." Mem. ISO Mot. to Strike 3 [Doc. No. 84]. Plaintiffs contend further that the evidence should not be considered to the extent it goes to the merits of the case, rather than to whether the putative collective is similarly situated. Id.

Defendants' evidence may be considered at the conditional certification stage to the extent it is relevant to whether Plaintiffs and potential opt-in plaintiffs are similarly situated. "[C]ourts do not need 'to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.'" Trezvant, 434 F. Supp. 2d at 43 (quoting Kalish v. High Tech Inst., Inc., No. CIV.04-1440, 2005 WL 1073645, at *7 (D. Minn. Apr. 22, 2005)). In ruling on a motion for conditional certification, however, courts are not limited to considering only the movant's evidence. See Prescott, 729 F. Supp. 2d at 364 (explaining that courts determine conditional certification based on "the pleadings and any affidavits which have been submitted") (emphasis added) (citation modified)); see also Wright, 683 F. Supp. 3d at 97 (explaining defendant's declarations showed proposed collective members were not subject to uniform compensation and performance policies).

Plaintiffs argue finally that the declaration is conclusory and not based on personal knowledge, the documents have not been authenticated, and the documents constitute inadmissible hearsay. Mem. ISO Mot. to Strike 8–10 [Doc. No. 84]. These arguments go to the

weight of this evidence and are addressed as appropriate below. Accordingly, Plaintiffs' Motion to Strike [Doc. No. 83] is DENIED.

B. *Motion for Conditional Certification*

Plaintiffs have met their burden to show that they are similarly situated to proposed collective members regarding their job duties and Defendants' pay policies.

Plaintiffs allege they were subject to the following common policies by Defendants: (1) a deficient tip credit notice policy; (2) a requirement that Plaintiffs purchase their own uniforms; (3) a requirement that Plaintiffs perform tasks unrelated to their tipped occupation at the tipped minimum wage rate; and (4) a requirement that Plaintiffs perform related side work for more than 30 continuous minutes or 20 percent of their work time at the tipped minimum wage rate. See Third Am. Compl. ¶ 8 [Doc. No. 51].

To support their allegations, Plaintiffs have provided six declarations, in which the declarants state that they were trained and required to perform non-tip generating work while being paid an hourly rate below the minimum wage. See, e.g., Mot. to Certify Ex. 1, ¶¶ 5–8, 10 [Doc. No. 61-1] ("Guerra Decl."); Mot. to Certify Ex. 4, ¶¶ 4–8, 10 [Doc. No. 61-4] ("Chocian Decl."). The servers and bartenders who submitted those declarations worked at various Olive Garden locations in six different states, and they each assert that Defendants paid them less than the minimum wage for tasks unrelated to their tipped occupation and periods of non-tipped side work that exceeded 30 minutes or 20 percent of their work time. See Guerra Decl. [Doc. No. 61-1] (Tennessee); Mot. to Certify Ex. 2 [Doc. No. 61-2] (Kappler Decl.) (Illinois); Mot. to Certify Ex. 3 [Doc. No. 61-3] (Contreras Decl.) (Oklahoma); Chocian Decl. [Doc. No. 61-4] (Illinois); Mot. to Certify Ex. 5 [Doc. No. 61-5] (Poindexter Decl.) (New Jersey and Florida); Mot. to Certify Ex. 6 [Doc. No. 61-6] (Augusto Decl.) (Florida and Massachusetts). The declarations

further assert, based on the declarants' personal observations and interactions, that Defendants maintain the same pay policies and job requirements for all tipped employees. See, e.g., Augusto Decl. ¶ 11 [Doc. No. 61-6]. Such declarations support conditional certification because they set forth a factual basis for Plaintiffs' allegations that Defendants imposed common pay policies across their restaurants. See Ademi v. Cent. Park Boathouse, LLC, No. 22 Civ. 8535, 2023 WL 6211979, at *6 (S.D.N.Y. Sept. 25, 2023).

Although Defendants emphasize that Plaintiffs' declarations show that some Plaintiffs performed different tasks unrelated to their tipped occupation, this distinction does not defeat Plaintiffs' claim that they are similarly situated. For example, Defendants point out that "although plaintiff Guerra claims he was required to clean the restaurant, plaintiff Kappler only claims that she was 'trained' to clean parts of the restaurant and 'required' to do other tasks, such as make salads." Opp'n to Mot. to Certify 18 [Doc. No. 77]. However, Plaintiffs need only show that they had "similar but not necessarily identical jobs" and "suffered from a common unlawful policy or plan." Morales Posada, 2023 WL 4085816, at *6 (quoting Prescott, 729 F. Supp. 2d at 364). Where Plaintiffs uniformly allege that Defendants' policy required them to perform tasks unrelated to their tipped occupation, including cleaning the restaurant and making salads, see Third Am. Compl. ¶ 8(c) [Doc. No. 51], evidence indicating that some individuals may not have performed all of the same unrelated tasks is insufficient to suggest that Plaintiffs worked under different policies.

Defendants further suggest that a nationwide collective should not be certified because Plaintiffs' declarations speak only to the policies at the restaurants where the declarants worked. Opp'n to Mot. to Certify 2–3, 17 [Doc. No. 77]. But this argument ignores the company-wide employee handbooks from 2017, 2021, and 2022, see Mot. to Certify Ex. 7 [Doc. No. 61-7]

(2017); Mot. to Certify Ex. 8 [Doc. No. 61-8] (2021); Mot. to Certify Ex. 9 [Doc. No. 61-9] (2022); job descriptions for servers and bartenders, Mot. to Certify Ex. 13 [Doc. No. 61-13] (servers); Mot. to Certify Ex. 14 [Doc. No. 61-14] (bartenders); and training guides for servers and bartenders, Mot. to Certify Ex. 16 [Doc. No. 61-16] (servers); Mot. to Certify Ex. 12 [Doc. No. 61-12] (bartenders). These materials indicate that bartenders and servers are responsible for cleaning parts of the restaurant and performing certain food preparation tasks across Defendants' restaurants. See, e.g., Mot. to Certify Ex. 12, at 39–40 [Doc. No. 61-12]; Mot. to Certify Ex. 16, at 13–15 [Doc. No. 61-16]; Mot. to Certify Ex. 30, at 19 [Doc. No. 61-30]. Accordingly, the materials support Plaintiffs' claim of centralized control over individual Olive Garden locations and the assertion that Defendants employ company-wide pay policies and job requirements. See Flood v. Carlson Rests. Inc., No. 14 Civ. 2740, 2015 WL 260436, at *2–3 (S.D.N.Y. Jan. 20, 2015) (finding tipped employees similarly situated where plaintiffs provided handbooks describing pay policies given to all tipped employees along with declarations containing "substantially similar" allegations of policies across eight restaurant locations).

Time records submitted by Plaintiffs show that some Plaintiffs clocked in at the standard minimum wage rate for certain periods of work. See Mot. to Certify Ex. 28 [Doc. No. 61-28]. But the time records also demonstrate that Plaintiffs earned the tipped minimum wage for most of their work time and thus do not undercut Plaintiffs' allegations that Defendants maintained policies that required them to perform unrelated work and non-tipped side work for extended periods at the tipped minimum wage rate. To the extent that evidence subsequently produced in discovery shows variations in Plaintiffs' clock-in procedures or indicates that some Plaintiffs were subject to differing pay policies, Defendants can move to decertify the collective based on such evidence. See Morales Posada, 2023 WL 4085816, at *6 (explaining that at stage two, the

court considers "factual and employment settings of the individual plaintiffs [and] the different defenses to which the plaintiffs may be subject on an individual basis[.]" (quoting Prescott, 729 F. Supp. 2d at 364)).

Plaintiffs have also established that they are similarly situated to potential opt-in plaintiffs with respect to Defendants' requirement that servers and bartenders purchase their own uniforms. In their opposition, Defendants do not appear to address Plaintiffs' claim in the Third Amended Complaint [Doc. No. 51] that Defendants required tipped employees to pay for uniform items. Id. ¶ 47.

As to Defendants' tip credit notice policy, Plaintiffs have provided Olive Garden Team Member Handbooks from three different years, noted supra, which explain that Defendants take the tip credit and describe the method of notice in Olive Garden restaurants. See Mot. to Certify Ex. 7, at 43 [Doc. No. 61-7]; Mot. to Certify Ex. 8, at 44 [Doc. No. 61-8]; Mot. to Certify Ex. 9, at 27 [Doc. No. 61-9]. Defendants also provide the court with unsigned tip credit notice forms. See Opp'n to Mot. to Certify Ex. A [Doc. No. 77-2]. Where the unsigned forms cannot establish that any servers or bartenders received the forms and were thus subject to tip credit policies specific to their location, Defendants cannot rely on these forms to establish that Defendants' tip credit notice policy differs between locations or potential opt-in plaintiffs.

Accordingly, at this stage, Plaintiffs' evidence is sufficient to show that Defendants have implemented a tip credit notice policy that applies to all potential opt-in plaintiffs.

Defendants assert that they provide a tip credit notice to servers and bartenders that complies with the FLSA, do not take the tip credit for work performed before the restaurant opens, pay servers the standard minimum wage for assembling salads, and pay bartenders the standard minimum wage beginning 30 minutes after the restaurant closes. Opp'n to Mot. to

Certify 2 [Doc. No. 77]. See Opp'n to Mot. to Certify Ex. 1 [Doc. No. 77-1] (Decker Decl.). But Defendants' assertions amount to legal arguments that their pay policies regarding servers and bartenders comply with the FLSA, "underscor[ing] the efficiencies of allowing the Plaintiffs to proceed jointly and addressing [Defendants'] common defenses in a single forum." Morales Posada, 2023 WL 4085816, at *7.

Defendants further assert that a collective should not be certified because Plaintiffs have failed to demonstrate that any of Defendants' policies or practices violate the FLSA. Opp'n to Mot. to Certify 9 [Doc. No. 77]. But at this stage, Plaintiffs need only "put forth some evidence that the legal claims and factual characteristics of the class in this case are similar." Trezvant, 434 F. Supp. 2d at 44. Conditional certification is therefore appropriate if the evidence sufficiently shows that the court will be able to determine whether Defendants' policies violated the FLSA as to the proposed collective. See Montoya v. CRST Expedited, Inc., 311 F. Supp. 3d 411, 420 (D. Mass. 2018) (explaining that "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at the conditional certification stage) (quoting Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). As explained supra, Plaintiffs have met this evidentiary burden.

Defendants also argue that conditional certification is inappropriate because "[t]he overwhelming majority of the putative collective has agreed to arbitration," which precludes them from joining the Kappler Action. Opp'n to Mot. to Certify 5 [Doc. No. 77]. Considering this posture, Defendants assert that it would be inefficient and misleading to send notice to many individuals who could not opt in. Id. But this argument does not take into account that the instant case has been severed from the action that includes plaintiffs that signed arbitration agreements (the Despres Action). Additionally, as Defendants suggest in their Opposition to the Motion for

Approval of Class Notice and Consent Form [Doc. No. 76], the notice ultimately issued can inform recipients that they are ineligible to participate in this action if they have agreed to arbitrate claims against Defendants.

Defendants' argument that conditional certification and notice are unnecessary because "there is no reason to believe that other servers and bartenders have any interest in opting in to this lawsuit" is similarly without merit. Opp'n to Mot. to Certify 6 [Doc. No. 77]. Fewer than 900 of the 46,098 servers and bartenders for whom Defendants take the tip credit opted in to the initial complaint and either remain in this case or are now part of the Despres Action. See Decker Decl. ¶ 6 [Doc. No. 77-1]; Notice of Filing Consents to Join Wage Claim 1–11 [Doc. No. 11]. There is thus a large pool of yet-unaccounted-for potential collective members. That some eligible plaintiffs have already opted in serves "as additional circumstantial evidence of the existence of a substantial number of other current and former employees who experienced similar conditions of employment." Crowell v. M St. Ent., LLC, No. 3:21-cv-00517, 2022 WL 3438074, at *6 (M.D. Tenn. Aug. 16, 2022).

Finally, Defendants argue that pursuant to 29 U.S.C. § 255(a), the temporal scope of the collective should be limited to two years where there is no basis for Plaintiffs' assertion that Defendants willfully violated the FLSA. Opp'n to Mot. to Certify 16 [Doc. No. 77]. Whether a violation is willful is "a question going to the merits of the case" and is therefore inappropriate for resolution at the conditional certification stage. Prescott, 729 F. Supp. 2d at 370. Instead, because "opt-in notice is to be construed broadly in furtherance of '[t]he broad remedial goal' of the FLSA," Plaintiffs need only allege willful violations. See Coppola v. Amrock, LLC, No. 1:23-cv-11639, 2024 WL 3849537, at *4 (D. Mass. Aug. 16, 2024) (alteration in original)

(quoting Hoffman-La Roche Inc., 493 U.S. at 173). Plaintiffs have sufficiently done so in the Third Amended Complaint [Doc. No. 51]. See, e.g., id. at ¶¶ 51, 73.

In sum, Plaintiffs have met their burden to establish that they are similarly situated to potential opt-in plaintiffs regarding Defendants' alleged FLSA violations. Accordingly, the court will conditionally certify a collective composed of all current and former servers and bartenders who worked at an Olive Garden restaurant operated by Defendants, were paid an hourly rate less than the standard minimum wage during the three-year period prior to the filing of the Third Amended Complaint [Doc. No. 51], and did not sign an arbitration agreement with Defendants. See Mot. to Certify 2 [Doc. No. 61]; Reply ISO Mot. to Certify 2 & n.1 [Doc. No. 80].

C. *Motion for Approval of Class Notice and Consent Form*

Plaintiffs have also moved for approval of a proposed class notice and consent form. Mot. for Approval [Doc. No. 63]; see Mot. for Approval Ex. 1 [Doc. No. 63-1]. However, in their Reply in Support of the Motion for Conditional Certification [Doc. No. 80], Plaintiffs request that the court allow the parties fourteen days to confer regarding Defendants' objections to the proposed notice form. Id. at 20; see Opp'n to Mot. for Approval of Class Notice and Consent Form [Doc. No. 76].

In light of Plaintiffs' request, Plaintiffs' Motion for Approval [Doc. No. 63] is DENIED without prejudice.

## V. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Strike [Doc. No. 83] is DENIED. Plaintiffs' Motion to Certify [Doc. No. 61] is GRANTED. Plaintiffs' Motion for Approval [Doc. No. 63] is DENIED without prejudice.

Within fourteen days of this order, the parties shall confer regarding Defendants' objections to Plaintiffs' proposed notice, and file a joint proposed notice if an agreement is

reached. If no agreement is reached, Plaintiffs may renew their motion for approval of class notice and consent form, and Defendants shall file any opposition within fourteen days of such filing.

IT IS SO ORDERED.

October 16, 2026

/s/ Indira Talwani
United States District Judge